# IN THE COURT OF COMMON PLEAS OF THE STATE OF DELAWARE
## IN AND FOR SUSSEX COUNTY

RONALD BAKER,                    )
                                 )
    Plaintiff,           )
                                 )
    v.                   )   C.A. No. CPU6-23-000560
                                 )
WILSON'S AUTO AUCTION SALES, INC.,  )
                                 )
    Defendant.           )

Submitted: August 12, 2024
Decided:  February 14, 2025

Patrick Scanlon, Esquire, 203 NE Front Street, Suite 101, Milford, DE 19963,
*Attorney for Plaintiffs*

Bruce A. Rogers, Esquire, 12 South Front Street, Georgetown, DE 19947, *Attorney for Defendants*

## DECISION AFTER TRIAL

Ronald Baker ("Plaintiff") brought this action against Wilson's Auction Sales, Inc., ("Defendant"), through its legal counsel, for a debt claim seeking payment in full of the debt, interest, and attorney's fees. The Court held a trial on August 5, 2024, and reserved its decision. Defendant filed a post-trial memorandum on August 12. The Court finds by a preponderance of the evidence Plaintiff has met his burden in part that the parties made an agreement for a loan and Defendant failed to complete all the payments.

**MIMS, J.**

The Court heard testimony from David L. Wilson ("Mr. Wilson") and Ronald Baker, who testified on his own behalf. Plaintiff entered documents into evidence without objection.[1] The Court heard testimony from Michelle Weesner and Mr. Wilson, who testified on behalf of Defendant, owned and operated by Mr. Wilson. Defendant entered documents into evidence without objection.[2]

## PROCEDURAL HISTORY

On June 5, 2023, Plaintiff filed a debt claim asserting Plaintiff served as the creditor on a note with Defendant.[3] Plaintiff asserts Defendant is in default for non-payment.[4] Plaintiff claims Defendant is indebted to Plaintiff for the principal amount of $56,400, accrued interest to the date of the complaint in the amount of $19,704.46, pre-judgment interest from January 4, 2019 to the date of judgment at 8.00% per annum, and attorney's fees.

On July 20, 2023, Defendant filed an Answer and denied Plaintiff served as a creditor on a debt owed by Defendant or that Defendant went into default on the note and therefore owed the amount in question.[5] Defendant asserts both Plaintiff fails to state a claim upon which relief may be granted and Plaintiff failed to present facts that provide this Court with jurisdiction over the matter.[6] Defendant prays this honorable Court for an order dismissing the Complaint, awarding Defendant fees, costs, and expenses (including reasonable counsel fees) associated with the defense of this frivolous action and for any other relief the Court deems appropriate.

---

[1] Plaintiff's Exhibits P1 – P3.
[2] Defendant's Exhibit No. 1.
[3] Complaint ¶¶ 1 – 4.
[4] Complaint ¶ 3.
[5] Defendant's Answer ¶¶ 1, 3 – 5.
[6] Defendant's Answer, Affirmative Defenses.

The Court held a pre-trial conference on September 19, 2023. The Court scheduled the matter for trial for August 5, 2024. On June 3, 2024, Michelle Weesner ("Weesner") filed a Motion to Quash the subpoena served on her by Defendant.[7] Weesner asserted she could not appear to testify in this matter due to medical reasons.[8] Specifically, she experienced an episode of cataplexy because of testifying by deposition in this matter, which caused her distress.[9] Weesner attached a letter from Elizabeth Buckshaw, P.A. from Choptank Community Health.[10] The letter stated Ms. Weesner has a condition called cataplexy, which is a sudden, temporary loss of muscle tone and voluntary muscle control that is often triggered by intense emotions like fear, anger, or stress.[11] The practitioner opined testifying in court can be stressful and likely trigger an episode and asked the Court to show sensitivity.[12] The practitioner requested the Court grant Ms. Weesner accommodations that would make her testimony less stressful such as testifying remotely.[13]

On June 6, 2024, Defendant filed a response to Weesner's Motion to Quash asking this Court to deny the Motion. Defendant asserts while Weesner did experience an episode of cataplexy during her deposition she was able to recover and resume her testimony.[14] Defendant asserts Weesner is a material witness to its case as she dealt directly with Plaintiff concerning the financial matters.[15] Specifically, Weesner drafted the purported account ledger therefore her testimony is

---

[7] "On timely motion, the Court shall quash or modify the subpoena if it: (i) fails to allow reasonable time for compliance; (ii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or (iii) subjects a person to under burden." Super. Civ. R. 45(c)(A).
[8] Weesner's Motion to Quash Subpoena.
[9] *Id.*
[10] Weesner Motion to Quash Subpoena, Attachment 1.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] Defendant's Answer to Weesner's Motion to Quash, ¶ 1.
[15] *Id* at ¶ 2.

critical.[16] Defendant contends Weesner was deposed by Plaintiff and not questioned by Defendant and to excuse Weesner would prejudice Defendant's defense.[17] Defendant notes Weesner's treating medical provider does not ask for her to be excused, rather for the Court to accommodate for her condition.[18] Defendant asserts the Court can take breaks in Weesner's testimony or allow testimony by Zoom if guarantees of trustworthiness of testimony can be assured.[19]

On June 11, 2024, Plaintiff filed a response to Weesner's Motion to Quash. Plaintiff asserts he made a tactical decision not to subpoena Weesner based on her medical problems that were observed during her deposition.[20] Plaintiff asserts attempting to obtain testimony from Weesner at trial would be extremely disruptive to the trial process and she has no "smoking gun" testimony to offer.[21] On July 29, 2024, this honorable Court held a pre-trial including Weesner's Motion to Quash. The Court heard testimony from all parties. The Court denied Weesner's Motion, however, and ordered accommodations be made to allow her to testify including taking breaks, allowing her husband to sit with her in case of a cataplexy episode, and testifying remotely by Zoom. On August 2, 2024, Plaintiff's counsel requested his client be allowed to testify remotely by Zoom with no objection from Defendant. On August 5, 2024, the Court held a trial and reserved its decision. On August 12, 2024, Defendant filed a post-trial memorandum.

## FACTS

After hearing testimony at trial, the Court finds the relevant facts to be as follows:

---

[16] *Id.*
[17] *Id* at ¶ 3.
[18] *Id* at ¶ 4.
[19] *Id* at ¶ 5.
[20] Plaintiff's Response to Weesner's Motion Quash Trial Subpoena, ¶ 2.
[21] *Id.*

Due to a lack of proper recordkeeping, both parties fail to recall the exact dates, terms, and nature of the dispute in controversy. There is no dispute the parties entered into an agreement for Plaintiff to loan money to Defendant. Plaintiff resided in a trailer on the property of Defendant in exchange for either wages and/or in-kind services such as security, maintenance, or lawn care. Weesner worked for Defendant part-time providing bookkeeping/accounts receivable in exchange for the horse she bought her daughter. Weesner testified that at some point in time Mrs. Wilson, co-owner of Defendant, reached out to her to inquire if Weesner would ask Plaintiff for a loan on behalf of Defendant.

Weesner asked Plaintiff to loan Defendant $29,000. Plaintiff initially denied the request due to an alleged previous unpaid loan made to Defendant in the amount of $30,000. Plaintiff admits he has no documentation of this initial loan as he moved from the trailer and lost paperwork, then eventually ended up at the Delaware Veteran's Home after a stroke. Currently, Plaintiff suffers from memory loss because of the stroke. Nevertheless, Plaintiff agreed to loan Defendant the $29,000. Weesner drafted an Excel spreadsheet[22] with a payment schedule for the entire amount for both loans, based on Plaintiff's calculation, on June 25, 2018, that was later modified on October 16, 2018.[23] Weesner admitted she did not give this spreadsheet to the accountant for Defendant. The spreadsheet states at the top:

> "Wilson's Auction Sales, Inc. does hereby promise to make weekly payments to Ronnie Baker for loans received totally $59,000 until payment in full.[24] Note: 10/1-10/19/18 Ronnie sick & in hospital did not work."

---

[22] Defendant's Exhibit No. 1, Tr: 19:2-6.
[23] Plaintiff's Exhibit No. 1.
[24] Defendant's Exhibit No. 1, Tr: 19:9-13.

The spreadsheet started at July 6, 2018, with weekly payments through December 10, 2021, equaling $18,000 in payments made by Defendant.[25] Plaintiff entered only the one page of the payment schedule into evidence. Weesner modified the spreadsheet when she typed her initials next to the initial payments from July 6, 2018, through September 14, 2018.[26] Payments from October 12, 2018, through February 5, 2019, are deemed "rent."[27] The remaining payments were made in $1,000 increments, initialed by Mr. Wilson, as Mr. Wilson preferred to pay in that amount versus the weekly $100 amount. Mr. Wilson admits to making those payments in cash and relying on the payment schedule on the spreadsheet; however, he is not clear who made the earlier payments or if Plaintiff paid rent.

The payment schedule entered into evidence is not signed by either party and does not encompass the full amount. Defendant admitted it repaid Plaintiff even after he moved off the property and into his sister's home. Defendant admitted it stopped making payments to Plaintiff once Plaintiff moved into the Delaware Veteran's Home as the facility enforced COVID-19 restrictions. Defendant fails to recall the full amount it owed to Plaintiff; however, it felt $59,000 was too high.

## PARTIES CONTENTIONS

Plaintiff asserts there is little credible testimony due to the length of time that has passed, and the parties do not remember a lot of the details. Plaintiff contends the only credible evidence is the document entered into evidence, which is a promissory note.[28] Plaintiff asserts the lack of signature by the parties is not fatal as Defendant acknowledged it owed the money by making

---

[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] Plaintiff's Exhibit No. 2.

payments for almost two years.[29] Plaintiff asserts its Exhibit No. 1 lists the amount owed to Plaintiff and Defendant's promise to pay him the amount along with the interest at the legal rate from the date of default.[30] Plaintiff contends the date of default is June 10, 2020.[31]

Defendant asserts Plaintiff's Exhibit No. 1 is not a promissory note but an amortization schedule that is not enforceable. Weesner drafted this spreadsheet on behalf of Plaintiff. Neither party signed the payment schedule, it is not for the full amount alleged by Plaintiff, and it was not kept in the ordinary course of business on behalf of Defendant. Defendant asserts there is no credible evidence of the sum certain.[32] Plaintiff fails to acknowledge the $18,000 paid by Defendant in his calculation of monies owed to him.[33] Plaintiff fails to meet his burden. There was no oral contract, Plaintiff seeks to use its Exhibit No. 1 as the basis of his claim.[34] However, assuming the document is enforceable and Plaintiff's testimony of loaning $29,000 is deemed credible the Defendant would be liable to Plaintiff in the sum of $11,000 without interest. If the Court deemed Weesner's testimony as credible and the sum loaned was $25,000, then the balance would be $7,000 owed by Defendant to Plaintiff. Finally, if the sum loaned by Defendant to Plaintiff was $20,000, this due to Weesner's lapse in memory, the balance would be $2,000.

## STANDARD OF REVIEW

The Court is the trier of facts and has the sole discretion to determine the credibility of the witnesses and any evidence provided.[35] If there is conflicting evidence presented at trial, the Court

---

[29] *Id.*
[30] *Id.*
[31] Plaintiff's Exhibit No. 3.
[32] Defendant's Post-Trial Memorandum at page 2.
[33] *Id* at page. 3.
[34] *Id* at page 5.
[35] *Leep v. Weline*, 2018 WL 301089 at *5 (Del. Com. Pl. Jan. 3, 2018).

7

has to reconcile these conflicts – if reasonably possible – to find congruity.[36] However, if the Court is unable to find such congruity, the Court must determine which portions of the testimony deserve more weight.[37] Any portion of the testimony that the Court finds unsuitable for consideration must be disregarded.[38] The Court considers "the witnesses' demeanor, or the fairness and descriptiveness of their testimony, their ability to personally witness or know the facts about which they testify, and any biases or interests they may have concerning the nature of the case."[39]

## DISCUSSION

Plaintiff claims Defendant is in default on a debt based under a promissory note in the amount of $56,400 plus pre- and post-judgment interest from the date of default and attorney's fees. In civil claims, the party asserting the claim bears the burden of proving each and every element of the claim by a preponderance of the evidence.[40] The side on which the greater weight of the evidence is found is the side where the preponderance of the evidence lies.[41] If the evidence is in even balance, then the party bearing the burden of proving a fact by a preponderance of the evidence has failed to satisfy the burden[42]:

> Except as provided in subsections (c) and (d), negotiable instrument means an unconditional promise or order to pay a fixed amount of money, without or without interest or other charges described in the promise or order, if it: (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain: (i) an undertaking or power to give, maintain or protect collateral to secure payment; (ii) authorization or power to the holder to confess judgment or realize on or dispose of collateral, (iii) a waiver of the benefit of any law intended for the advantage or

---

[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Sullo v. Kousournas*, 2010 WL 718666 at *6 (Del. Super. Feb. 3, 2010).
[41] *Reynolds v. Reynolds*, 237 A.2d 708, 711 (Del. 1967).
[42] *Fletcher v. Shahan*, 2002 WL 499883 at *3 (Del. Super. Mar. 6, 2002).

protection of an obligor, (iv) a term that specifies the law that governs the promise or order, or (v) an undertaking to resolve in a specified forum a dispute concerning the promise or order.[43]

The Court holds the document entered by Plaintiff fails to meet the requirements for a "note" or some sort of negotiable instrument. Weesner admitted she drafted this spreadsheet at Plaintiff's request to track the repayment of monies owed by Defendant. Weesner admitted she wrote down $59,000 based on Plaintiff's contention there had been a prior loan rather than any personal knowledge on her part. Plaintiff's Exhibit 1 contains no set time limit for payment, no signature by a person in authority for either party, no discussion of interest, and no definitive evidence Plaintiff was due this amount of money.

While Plaintiff's Exhibit Number 1 is not enforceable as a promissory note, the Court holds it is a memorialization of an agreement between the parties to repay a loan made by Plaintiff to Defendant. The actual dispute lies in the amount:

> No action shall be brought to charge any person upon any agreement made upon consideration of marriage, or upon any contract or sale of lands, tenements, or hereditaments, or any interest concerning them, or upon any agreement that is not to be performed within the space of one year from the making thereof, or to charge any person to answer for debt, default, or miscarriage, of another, in any sum of the value of $25 and upwards, unless it is in writing, or some memorandum, or notes thereof, are signed by the party to be charged therewith, or some other person thereunto by the party lawfully authorized in writing.[44]

The exceptions to the Statute of Frauds exist because partial performance or an admission, both are reliable evidence that an oral agreement between the parties does in fact exist.[45] Defendants requested a loan from Plaintiff through Weesner. Plaintiff testified it was $29,000 and

---

[43] 6 *Del. C.* § 104(a)(1-3).

[44] 6 *Del. C.* § 2714(a).

[45] *Stella v. Wilm. Savings Fund Society, FSB*, 1993 WL 138697 at * 11 (Del. Super. Mar. 30, 1993).

Weesner, who made the request, drafted a repayment schedule for Defendant with that amount plus an alleged prior loan made by Plaintiff to Defendant. The Court finds that while Weesner may have been unsure of the amount she requested during her deposition, she clearly put that amount in the document made years earlier. The Court holds there is no evidence Plaintiff made a prior loan in the amount of $30,000. Plaintiff admitted he had no documentation of that prior loan.

Defendant admitted Plaintiff loaned Defendant money and Weesner created the spreadsheet for tracking purposes. Mr. Wilson, who does not recollect the exact amount loaned by Plaintiff, did follow the repayment schedule for over three years and initialed the dates and amounts that Defendant repaid. According to the spreadsheet, these payments equaled $18,000. Defendant admitted it stopped making payments when Plaintiff entered the Delaware Veterans Home. The Court finds Plaintiff has met his burden that he is owed repayment of $29,000 and with the credit of $18,000 he is owed $11,000.

## CONCLUSION

For the reasons set forth in this Opinion, **IT IS SO ORDERED** this 14th day of February 2025 the Court finds, by a preponderance of evidence, that Plaintiff provided sufficient evidence Defendant Wilson's Auction Sales, Inc. owes $11,000 to Plaintiff. However, due to no evidence of interest, the Court will not order pre- or post-judgment interest. This honorable Court enters judgment in favor of Plaintiff for $11,000, reasonable attorney's fees, and court costs, against Wilson's Auction Sales, Inc.

The Honorable Rae M. Mims
Judge

Cc:    Shelly Swafford, Judicial Case Manager Supervisor

11